UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JOSEPH MCGRAIN,

Defendant.

REPORT & RECOMMENDATION

20-CR-06113-FPG-MJP

---

**Pedersen, M.J.** On January 25, 2021, the Court issued an order on Defendant's omnibus motion (ECF No. 47). In the order, the Court reserved on whether to hold a suppression hearing on suppression of tangible evidence and statements, which will now be addressed. For the reasons stated below, the undersigned recommends that Defendant's application to suppress evidence recovered from searching Defendant's Dodge Caravan, Samsung cell phone, and Facebook and Google accounts be denied. Further, the undersigned recommends that Defendant's statements made during the March 27, 2020, 9-1-1 response and the two phone calls Defendant made to police on April 6, 2020, not be suppressed. Finally, the undersigned recommends that Defendant's statements during his April 6, 2020, custodial interview not be suppressed up until the time Defendant invoked his right to an attorney.

## SUPPRESSION OF TANGIBLE EVIDENCE

Defendant moves to suppress all evidence seized pursuant to the search of his Dodge Caravan. Defendant further moves to suppress all evidence obtained pursuant to the search of his Samsung cellular telephone. Finally, Defendant moves to suppress all evidence seized pursuant to the searches of his Google and Facebook accounts. Defendant claims that all the searches violated his Fourth Amendment rights.

The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV; *see also* Fed. R. Crim. P. 41. In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court affirmed the "totality of the circumstances" test to determine whether a search warrant satisfies the Fourth Amendment's probable cause requirement. According to the Court, the issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

In addition, the Fourth Amendment further requires that a search warrant "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV; *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). The reason for this "particularity" requirement is to prevent general searches. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the

[particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* at 84.

In order to satisfy the Fourth Amendment, a search warrant must be based upon probable cause to believe a crime has been committed and that evidence of that crime will be discovered in the place to be searched. *See Illinois v. Gates*, 462 U.S. at 238.

### *Suppression of the Evidence Seized from the Dodge Caravan*

Defendant moves to suppress all evidence seized as a result of searching the Dodge Caravan, stating that the affidavit for the search warrant did not establish probable cause to search the specific location in the Dodge Caravan where Defendant's cell phone was located and that the fruits of the search should be suppressed. (Def's Omnibus Mot. at 7, ECF No 30.)

Probable cause exists because the reasoning for why Defendant's phone was likely in the Dodge Caravan was clear, as was the reasoning for why the Greece Police felt there was evidence of a crime on the phone. (Montinarelli Aff. at 7, ECF No. 30–1.) Officer Montinarelli's affidavit outlines that on April 4, 2020, the victim took part in a forensic interview during which she discussed illegal acts Defendant committed, as well as discussed that she sent "numerous naked photographs of herself to his phone via text message and snapchat. [Victim] describes [Defendant]'s cell phone as a Samsung Smartphone with what appears to be a gray case with a skull." (*Id.*)

The same day, Defendant called the Greece Police Department with his cell phone, stating that he was leaving work to come straight to the Greece Police Department and would be there in approximately fifteen minutes. (*Id.*; Gov't's Resp. in Opp'n, Ex. E (phone call recording), ECF No. 43.) Defendant arrived in a black Dodge Caravan and upon arrival went into an interview room where he stated that he only had his keys and wallet on him. (Montinarelli Aff. at 7, ECF No. 30–1.) The Greece Police also talked to Defendant's girlfriend who stated that Defendant did not stop home before going to the Police Department. (*Id.*) The vehicle was parked at the Police Department as Defendant was being interviewed there. Because Defendant called the police station from his phone prior to driving there and did not stop at home and did not have the phone on him in the interview room, Officer Montinarelli logically concluded that the phone was likely in the Dodge Caravan. His affidavit also discusses the phone's unique appearance and what criminal evidence was likely to be on it. Therefore, Officer Montinarelli's affidavit did establish probable cause to search the Dodge Caravan, and the evidence produced from that search should not be suppressed.

*Suppression of Social Media Accounts*

Defendant argues that the affidavit in support of a warrant to search his Facebook and Google Accounts lacked probable cause to believe that there was evidence of a crime located in these accounts. (Def's Omnibus Mot. at 8, ECF No 30).

The affidavit attests that on April 1, 2020, Victim and Teresa Shelly voluntarily signed a consent form to permit a search of Victim's phone, producing a long history of messages with Defendant, in which he discussed committing illicit acts

4

with Victim. (Montinarelli Aff. at 8, ¶ 3, ECF No. 30–3). As Defendant's Facebook account was the source for these messages, it is reasonable to assume that by searching Defendant's account, the messages would be found there. The same can be said with regard to Defendant's Google Account, as Defendant's cell phone "appeared to be recently wiped of data, pictures, history, and text messages," (*Id*. at 13, ¶ 11, ECF No. 30-2) and Greg Peck at the Monroe County District Attorney's Office performed a forensic examination of the cell phone and determined that Defendant used Google services at a specific G-Mail address to back up his phone (*Id*. at 13, ¶ 14.) Greg Peck also informed Officer Montinarelli that he believed Defendant "was deleting data or p[er]formed a factory reset on the phone prior to the device being taken into police custody." (*Id*.) The information from Defendant's phone was likely retrievable through searching his Google account. Officer Montinarelli stated in his affidavit that in his experience and training, offenders tend to backup their illicit messages and pictures on more than one device or use a cloud service. (*Id*. at 14, ¶ 16, ECF No. 30-2.) Because probable cause was shown in the affidavits, the evidence produced from the search of Defendant's Facebook and Google accounts should not be suppressed.

## SUPPRESSION OF STATEMENTS

Defendant moves to suppress all his statements on the ground that he did not knowingly and voluntarily waive his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of a custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth

5

Amendment privilege against self-incrimination and then voluntarily waived that right. *Miranda*, 384 U.S. at 444.

> Custodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak (the in custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminating nature of the disclosures sought (the investigative intent requirement).

*United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (citing *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (internal citations omitted)).

In determining whether a defendant was in custody, a court must consider two questions. First, "whether a reasonable person would have thought he was free to leave the police encounter at issue." *United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 371 (2004). If so, the court must then consider whether the "reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

If a defendant is in custody at the time statements are made, the government must then demonstrate a valid *Miranda* waiver before any such statements may be admissible. It is the government's burden to prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

*March 27, 2020, Encounter*

On March 27, 2020, police responded to a 9-1-1 call at 46 Wood Road. (Gov't's Resp. in Opp'n at 8, ECF No 43.) Officers were responding to the 9-1-1 call in which the caller made allegations against Defendant. Defendant does not dispute the government's representation that while officers were outside the residence speaking with a witness, Defendant "approached officers and stated the situation was ridiculous and he would not be staying there to deal with what was occurring. Officers attempted to speak with [him], but he became irate, refused to speak with them and stated he was leaving." (*Id.*) Defendant drove off of his own volition (*Id.*; Def.'s Mem. of Law at 9–10, ECF No. 30), illustrating that this was indeed not a custodial interrogation and that Defendant understood he was free to leave at any time. As Defendant did not raise any additional issues, and was not undergoing a custodial interrogation during this encounter, the undersigned need not conduct a factual hearing and recommends that that the District Judge deny Defendant's application to suppress statements from this meeting.

*April 6, 2020, Telephone Calls*

On April 6, 2020, Defendant made two phone calls to law enforcement. (Gov't's Resp. in Opp'n at 8–9; Gov't Exs. D & E, ECF No. 43.) Defendant initiated both calls, and the officer who was on the other end only attempted to locate the defendant. The officer did not ask any questions designed to elicit incriminating evidence. Instead, Defendant asked the officer whether he was under arrest and whether he needed an attorney. Although Defendant asked the officer whether he should have his attorney meet him at the police station, he did not at that time, or after arriving at the police

7

station, or during the first part of his custodial interview, unequivocally invoke his right to counsel. The Court of Appeals stated in *United States v. Oehne*, 698 F.3d 119, 122–23 (2d Cir. 2012):

> For a suspect to invoke his *Miranda* right to counsel, he must at a minimum make "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation.*" *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S. Ct. 2204, 115 L.Ed.2d 158 (1991) (emphasis in original). "If an accused makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis v. Thompkins,* ––– U.S. –––, 130 S. Ct. 2250, 2259–60, 176 L.Ed.2d 1098 (2010) (internal quotation marks and citations omitted). Statements such as: "Maybe I should talk to a lawyer," *Davis v. United States,* 512 U.S. 452, 462, 114 S. Ct. 2350, 129 L.Ed.2d 362 (1994) (internal quotation marks omitted); "Do you think I need a lawyer?" *Diaz v. Senkowski,* 76 F.3d 61, 63 (2d Cir.1996); and a suspect's statement that he "was going to get a lawyer," *United States v. Scarpa,* 897 F.2d 63, 68 (2d Cir.1990), have been found to be insufficient to constitute an unambiguous request for counsel. Similarly, the Supreme Court has held that an accused who wants to invoke his or her right to remain silent must do so unambiguously. *See Berghuis,* 130 S. Ct. at 2260.

While Defendant was on the phone, he was not "in custody" for *Miranda* purposes. The undersigned has reviewed recordings of both call and finds no need for an evidentiary hearing and recommends that the District Judge deny the application to suppress Defendant's statements during the two phone calls.

### *April 6, 2020 Custodial Interview*

On April 6, 2020, Defendant voluntarily arrived at the Greece Police Department for an interview. (Govt's Resp. in Opp'n at 9, ECF No 43). Prior to asking any pertaining to their investigation, an officer read Defendant his *Miranda* Warnings, which he voluntarily waived. (Custodial Interview, at 3:52:45, Gov't Ex.s

F & G.)[1] Later into the interview, Defendant became agitated with the interviewers and clearly and unequivocally asked for an attorney and ended the interview (*Id.* at 4:28:28). Defendant was aware he was being questioned and was aware of his *Miranda* rights and knowingly and voluntarily waived them at the start of the investigative interview. *Berghuis v. Thompkins*, 560 U.S. 370, 385, 130 S. Ct. 2250, 2262, 176 L. Ed. 2d 1098 (2010) ("Although *Miranda* imposes on the police a rule that is both formalistic and practical when it prevents them from interrogating suspects without first providing them with a *Miranda* warning, see *Burbine,* 475 U.S., at 427, 106 S. Ct. 1135, it does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights. As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.") Therefore, the undersigned finds no reason to hold an evidentiary hearing and recommends to the District Judge that the application to suppress Defendant's statements from the custodial interview be denied up until the time that Defendant invoked his right to counsel and ended the interview.

## CONCLUSION

For the reasons stated above, the undersigned finds no need to hold an evidentiary hearing and recommends to the District Judge that Defendant's applications to suppress evidence recovered from searching Defendant's Dodge

---

[1] The government supplemented the exhibit containing the custodial interview as the first disc submitted did not contain clear audio. All the exhibits are on file with the Court.

Caravan, his Samsung cell phone, and his Facebook and Google accounts be denied. Further, the undersigned also recommends that Defendant's application to suppress statements made during the March 27, 2020, 9-1-1 response and the two phone calls to police on April 6, 2020, be denied. Finally, the undersigned recommends that Defendant's motion to suppress statements made during the custodial interview be denied, up until the point at which Defendant unequivocally invoked his right to counsel and ended the interview.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and

---

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).

recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

Dated: February 4, 2021
Rochester, New York

*[signature]*
MARK W. PEDERSEN
United States Magistrate Judge