```
 1                    UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF NEW YORK

 3

 4

 5     - - - - - - - - - - - - - - X
       UNITED STATES OF AMERICA    )    20CR6113
 6
       vs.
 7                                      Rochester, New York
       JOSEPH MCGRAIN             )    April 20, 2021
 8                 Defendant.          3:00 P.M.
       - - - - - - - - - - - - - - X
 9     PLEA HEARING

10
                     TRANSCRIPT OF PROCEEDINGS
11         BEFORE THE HONORABLE ELIZABETH A. WOLFORD
                   UNITED STATES DISTRICT JUDGE
12

13

14                 JAMES P. KENNEDY, JR., ESQ.
                   United States Attorney
15                 BY: MELISSA M. MARANGOLA, ESQ.
                   Assistant United States Attorney
16                 6200 Federal Building
                   Rochester, New York 14614
17

18
                   MARIANNE MARIANO, ESQ.
19                 Federal Public Defender
                   BY: JEFFREY L. CICCONE, ESQ.
20                 28 East Main Street, Suite 400
                   Rochester, New York 14614
21                 Appearing on behalf of the Defendant

22

23

24     COURT REPORTER: Karen J. Clark, Official Court Reporter
                   KarenClark1013@AOL.com
25                 100 State Street
                   Rochester, New York 14614
```

1      USA VS. J. MCGRAIN

2      P R O C E E D I N G S

3       *    *    *

4

5

6

15:10:24 7     THE CLERK:  We're here in the matter of the

15:10:25 8 United States versus Joseph McGrain, 20CR6113.

15:10:30 9     THE COURT:  Good afternoon, everybody.  We

15:10:40 10 have Ms. Marangola here from the U.S. Attorney's Office;

15:10:42 11 and Mr. Ciccone from the Federal Public Defender's

15:10:42 12 Office.

15:10:45 13     And are you Joseph McGrain?

15:10:47 14     THE DEFENDANT:  Yes.

15:10:47 15     THE COURT:  And you're represented by Mr.

15:10:50 16 Ciccone?

15:10:51 17     THE DEFENDANT:  Yes.

15:10:51 18     THE COURT:  And I understand that you intend

15:10:53 19 to plead guilty to the indictment in this case without

15:10:56 20 the benefit of a plea agreement, correct?

15:10:59 21     THE DEFENDANT:  Yes, ma'am.

15:11:00 22     THE COURT:  First of all, I want you to move

15:11:07 23 the microphone so that it is closer to you so I can hear

15:11:10 24 everything you are saying, especially with the mask

15:11:12 25 because sometimes it becomes muffled.

1                        USA VS. J. MCGRAIN

15:11:16   2          I need to ask you questions.  The purpose of

15:11:17   3   my questions is that I need to make sure that you

15:11:20   4   understand everything you're agreeing to and you're

15:11:22   5   entering into the plea in a knowing, voluntary and

15:11:24   6   intelligent manner.  So if at any point in time during

15:11:28   7   the course of my questions you either do not understand

15:11:31   8   me or you have a question for me or Mr. Ciccone, I want

15:11:33   9   you to stop me and ask your question.  Do you

15:11:37   10   understand?

15:11:37   11          THE DEFENDANT:  Yes, ma'am.

15:11:37   12          THE COURT:  The goal is not to go through

15:11:40   13   this quickly.  The goal is to make sure you understand

15:11:43   14   your rights and the rights that you're going to be

15:11:45   15   giving up.  Do you understand?

15:11:47   16          THE DEFENDANT:  Yes, ma'am.

15:11:47   17          THE COURT:  I'll ask you please stand and

15:11:50   18   raise your right hand.

15:11:50   19          THE CLERK:  Do you solemnly swear to tell

15:11:50   20   the truth, the whole truth, and nothing but the truth so

15:11:50   21   help you God?

15:11:50   22          THE DEFENDANT:  Yes.

15:12:05   23          THE COURT:  Okay.  You can put it down.

15:12:06   24   What you just did, sir, is you took an oath to tell me

15:12:09   25   the truth, therefore I'm going to expect you to answer

```
 1                    USA VS. J. MCGRAIN
```

15:12:12   2   my questions truthfully.  If you do not answer my

15:12:14   3   questions truthfully, you could be prosecuted for

15:12:17   4   another crime called perjury.  Do you understand that.

15:12:18   5            THE DEFENDANT:  Yes, ma'am.

15:12:19   6            THE COURT:  Could you state your full name

15:12:20   7   for the record?

15:12:21   8            THE DEFENDANT:  Joseph McGrain.

15:12:22   9            THE COURT:  Do you have a middle name?

15:12:23   10            THE DEFENDANT:  No, ma'am.

15:12:24   11            THE COURT:  Where were you born?

15:12:25   12            THE DEFENDANT:  I was born in Rochester, New

15:12:27   13   York.

15:12:27   14            THE COURT:  How old are you?

15:12:28   15            THE DEFENDANT:  I'm 50 years old.

15:12:29   16            THE COURT:  How far did you go in school?

15:12:31   17            THE DEFENDANT:  Graduated.

15:12:33   18            THE COURT:  Graduated from high school?

15:12:34   19            THE DEFENDANT:  High school, ma'am.

15:12:35   20            THE COURT:  Can you read, write and

15:12:37   21   understand English?

15:12:37   22            THE DEFENDANT:  Yes.

15:12:38   23            THE COURT:  Are you currently being treated

15:12:39   24   for any medical or mental health condition?

15:12:42   25            THE DEFENDANT:  No, ma'am.

```
 1                    USA VS. J. MCGRAIN
```

15:12:42   2          THE COURT:  Are you taking any prescription

15:12:44   3   medication?

15:12:45   4          THE DEFENDANT:  No, ma'am.

15:12:49   5          THE COURT:  You seemed to hesitate there.

15:12:51   6          THE DEFENDANT:  I was thinking I'm taking

15:12:53   7   stuff for heartburn, that is not prescription, it is

15:12:56   8   over the counter.

15:12:57   9          THE COURT:  And are you under the influence

15:12:58   10   of any drugs or alcohol?

15:12:59   11          THE DEFENDANT:  No, ma'am.

15:12:59   12          THE COURT:  Is there any reason that you are

15:13:01   13   not able to understand what is happening here in court

15:13:04   14   today?

15:13:05   15          THE DEFENDANT:  No, ma'am.

15:13:05   16          THE COURT:  Now, have you talked to Mr.

15:13:08   17   Ciccone about the government's case against you, and by

15:13:11   18   that I mean the proof that the government would have and

15:13:13   19   if this case went to trial as we're scheduled to do

15:13:16   20   right now on June 1st?

15:13:18   21          THE DEFENDANT:  Yes.

15:13:18   22          THE COURT:  Have you talked to him about

15:13:19   23   that?

15:13:20   24          THE DEFENDANT:  Yes, ma'am.

15:13:20   25          THE COURT:  Have you also talked with Mr.

```
 1                    USA VS. J. MCGRAIN
15:13:22  2  Ciccone about what the likely result might be if the
15:13:25  3  case went to trial?
15:13:26  4             THE DEFENDANT:  Yes, ma'am.
15:13:26  5             THE COURT:  Would it be fair to state that
15:13:29  6  based on your discussions with your attorney, you
15:13:31  7  believe pleading guilty to the indictment is in your
15:13:35  8  best interest?
15:13:35  9             THE DEFENDANT:  Yes, ma'am.
15:13:37 10             THE COURT:  Now, Mr. Ciccone, maybe you
15:13:39 11  could explain for us -- obviously, Mr. McGrain, more
15:13:43 12  often than not when defendants plead guilty, they do so
15:13:47 13  with the benefit of a plea agreement.  So maybe, Mr.
15:13:50 14  Ciccone, you could explain for the record why you have
15:13:55 15  talked to your client about pleading guilty to the
15:13:57 16  indictment.
15:13:58 17             MR. CICCONE:  Sure, Judge.  You mean as in
15:14:00 18  why plead to the indictment instead of with a plea
15:14:03 19  agreement?
15:14:03 20             THE COURT:  Yes, exactly.
15:14:04 21             MR. CICCONE:  Judge, simply because the
15:14:06 22  indictment or, I'm sorry, the plea agreement is
15:14:09 23  essentially a plea to the indictment.  The last plea
15:14:12 24  offer to Mr. McGrain was a plea to Count 1.  Counts 2
15:14:16 25  and 3 are obstruction counts, which are included within
```

```
 1                    USA VS. J. MCGRAIN
 2   the Guidelines anyway for Count 1, so there is really no
 3   real advantage to having a plea agreement in this case.
 4   But, obviously, a plea agreement requires waiver of
 5   certain extra rights that Mr. McGrain does not have to
 6   waive without the plea agreement.
 7           THE COURT:  So, in other words, your
 8   assessment is that the plea offer did not really offer
 9   any benefit to Mr. McGrain as opposed to simply pleading
10   to the indictment?
11           MR. CICCONE:  Exactly, Judge.
12           THE COURT:  And do you understand that, mr.
13   McGrain?
14           THE DEFENDANT:  Yes, ma'am.
15           THE COURT:  And you agree with that
16   assessment of your attorney?
17           THE DEFENDANT:  Yes, ma'am.
18           THE COURT:  Now, to the extent that you've
19   had any questions about any of this, has Mr. Ciccone
20   been able to answer them to your satisfaction?
21           THE DEFENDANT:  Yes.
22           THE COURT:  And have you had enough time to
23   talk to Mr. Ciccone about this before coming here today?
24           THE DEFENDANT:  Honestly, no.
25           THE COURT:  And so you feel you need more
```

1                          USA VS. J. MCGRAIN

15:15:11   2    time?

15:15:12   3               THE DEFENDANT:  It's not, it's because of

15:15:14   4    the COVID and Monroe County Jail.

15:15:16   5               THE COURT:  And has that interfered with

15:15:20   6    your ability --

15:15:20   7               THE DEFENDANT:  It's actually interfered

15:15:22   8    with a lot of us discussing stuff.  There is just times,

15:15:26   9    certain times that we can discuss stuff and certain

15:15:30   10   times when I'm actually on a time limit, 15 minutes is

15:15:34   11   all I get, and if the 15 minutes is up, it's up.  They

15:15:37   12   cut the phones off and you're out of the room and there

15:15:43   13   is nothing he can do and nothing I can do because of the

15:15:45   14   COVID and the situation we're in now.

15:15:47   15              THE COURT:  Well, I'm not going to take a

15:15:49   16   plea from anybody that is telling me they haven't had

15:15:52   17   enough time to talk to their attorney about it.

15:16:00   18              THE DEFENDANT:  We've had time to talk about

15:16:02   19   this, yes.  Just the case overall, we haven't had enough

15:16:05   20   time to talk about at all.

15:16:06   21              THE COURT:  I'm still not going to take a

15:16:09   22   plea from somebody telling me that.  What we can do and

15:16:13   23   I'll ask the Marshals to hopefully try and accommodate

15:16:16   24   this is to arrange, if you don't have time to meet with

15:16:21   25   Mr. Ciccone at the jail, to have time to meet with him

USA VS. J. MCGRAIN

15:16:25   2   here in the holding cell to discuss anything that you

15:16:28   3   need to.

15:16:30   4        THE DEFENDANT:  We've discussed all of this

15:16:32   5   earlier before coming in, and I agree with everything

15:16:34   6   we've discussed here.  Like I said, the overall, from

15:16:37   7   the time that I was incarcerated all the way up until

15:16:41   8   now, I haven't really had time to really talk to

15:16:44   9   anybody, not just him, anybody.

15:16:47   10        MR. CICCONE:  Judge, I don't want to put

15:16:49   11   words in Mr. McGrain's moth, because we've had this

15:16:52   12   conversation multiple times.  He thinks the case took

15:16:57   13   longer than if we would have had time to talk for longer

15:17:01   14   periods of time, not necessarily there is more he wants

15:17:04   15   to talk about once we've gotten here.

15:17:07   16        THE COURT:  Is that true?

15:17:08   17        THE DEFENDANT:  That is what I'm trying to

15:17:09   18   get to.

15:17:09   19        THE COURT:  Are you telling me that you need

15:17:11   20   to talk about the evidence more with Mr. Ciccone or that

15:17:14   21   you need to discuss --

15:17:16   22        THE DEFENDANT:  No.

15:17:16   23        THE COURT:  -- the potential result here

15:17:19   24   more with Mr. Ciccone before you move forward?

15:17:21   25        THE DEFENDANT:  No.

```
 1                    USA VS. J. MCGRAIN
 2          THE COURT:  Do you want to move forward?
 3          THE DEFENDANT:  I want to move forward.  I
 4  want to put this behind me and my family.
 5          THE COURT:  You're looking at an awful lot
 6  of time.  It's a mandatory minimum of 10 years, I think,
 7  for Count 1.
 8          THE DEFENDANT:  I have to look at life if I
 9  go to trial, so take your pick.
10          THE COURT:  Well, and that is because you
11  believe you'll likely be convicted at trial, correct?
12          THE DEFENDANT:  Yes.
13          THE COURT:  Look it, I want you to be able
14  to -- this is a big decision you have to make here.  And
15  I'm not suggesting by any means that the decision you're
16  making is the wrong one.  But my role is to make sure
17  that anybody who appears in front of me and enters into
18  a plea and pleads guilty to something, gives up their
19  right to go to a trial, a constitutional right to go to
20  a trial, my job is to make sure that they know what
21  they're doing, and that they've had sufficient time to
22  talk through the issues with their attorney.
23          THE DEFENDANT:  I know what I'm doing.
24          THE COURT:  You sure?
25          THE DEFENDANT:  Positive.
```

```
 1                     USA VS. J. MCGRAIN

 2              THE COURT:  And you want to go forward with

 3   this today?

 4              THE DEFENDANT:  Yes.

 5              THE COURT:  Mr. Ciccone, are you confident

 6   that Mr. McGrain has had enough time to talk to you

 7   about this?

 8              MR. CICCONE:  Judge, I am in the sense of

 9   what I mentioned before.  Overall, we've talked many,

10   many times, albeit in 15-minute increments and sometimes

11   here at the courthouse when we've had appearances.  I

12   don't have any doubt that we've spoken at length about

13   the evidence in the case, the likelihood of or different

14   strategies of what we might do as we prepared for trial,

15   as we prepared for motions.  And based on my previous

16   conversations with Mr. McGrain, I didn't get the

17   impression that that is what he meant.  I think we've

18   certainly talked about the case as much as I've talked

19   to any client about any case.  But it has been under

20   less than ideal circumstances for sure.  And, you know,

21   when I meet with him at the jail, we have to talk

22   through the phone through the glass or on the phone from

23   the jail to my office, and it certainly hasn't been

24   ideal.  But I don't think there is any part of his case

25   that we haven't discussed.  But I'm happy to talk with
```

15:18:26
15:18:28
15:18:28
15:18:29
15:18:32
15:18:35
15:18:36
15:18:38
15:18:40
15:18:45
15:18:48
15:18:51
15:18:56
15:19:00
15:19:06
15:19:08
15:19:12
15:19:16
15:19:21
15:19:24
15:19:26
15:19:29
15:19:32
15:19:35

1                         USA VS. J. MCGRAIN

15:19:39  2  him further to make sure.

15:19:41  3              THE COURT:  Because what I can tell you Mr.

15:19:44  4  McGrain, I have a calendar on Monday next week.  I can

15:19:47  5  put this down for a plea hearing on Monday if you think

15:19:50  6  that would make more sense for you to talk to Mr.

15:19:54  7  Ciccone and make sure that any issues that you need to

15:19:56  8  address have been resolved?  If you tell me you don't

15:20:00  9  want to do that, that you're satisfied that you've had

15:20:02  10  enough time to talk to him.

15:20:04  11              THE DEFENDANT:  I've had enough time to talk

15:20:06  12  with him.

15:20:07  13              THE COURT:  You're sure about that?

15:20:08  14              THE DEFENDANT:  I'm satisfied.

15:20:09  15              THE COURT:  All right.  Are you satisfied

15:20:10  16  with his advice and representation?

15:20:12  17              THE DEFENDANT:  Yes.

15:20:12  18              THE COURT:  All right.  Any concerns, Ms.

15:20:15  19  Marangola, about going forward with this?

15:20:16  20              MS. MARANGOLA:  No, your Honor.

15:20:17  21              THE COURT:  And, Mr. Ciccone, you have no

15:20:19  22  concerns?

15:20:19  23              MR. CICCONE:  No, Judge.

15:20:20  24              THE COURT:  All right.  Let me direct your

15:20:23  25  attention to a document that the government filed, which

                        USA VS. J. MCGRAIN

15:20:28  2   is the government's calculations of maximum sentence and

15:20:32  3   sentencing Guideline range.  Let me maybe back up a

15:20:36  4   minute.  In Federal Court, when a defendant gets

15:20:40  5   sentenced, the judge first has to calculate what the

15:20:43  6   Sentencing Guidelines would recommend for a sentence.

15:20:46  7   That is a decision that I will make at the time of

15:20:49  8   sentencing.  I'll make that decision based in part on

15:20:52  9   what I see in a Presentence Investigation Report that

15:20:55  10  will be prepared by the Probation Department.  In that

15:20:59  11  report, the Probation Department will calculate an

15:21:02  12  offense level and a criminal history category, and then

15:21:05  13  those numbers will recommend a range for a sentence.  Do

15:21:08  14  you understand that?

15:21:11  15            THE DEFENDANT:  Yes, ma'am.

15:21:11  16            THE COURT:  Now, the Sentencing Guidelines

15:21:13  17  are considered advisory, they are not mandatory.  I also

15:21:18  18  have to consider a number of other factors in connection

15:21:20  19  with sentencing.  I have to consider your background,

15:21:23  20  the nature and circumstances of the crime that you pled

15:21:25  21  guilty to.  I have to consider various other factors,

15:21:31  22  among other things, too, I have to look at what the

15:21:34  23  mandatory minimum and maximum sentences that can be

15:21:37  24  imposed.  Do you understand that?

15:21:38  25            THE DEFENDANT:  Yes.

1                       USA VS. J. MCGRAIN

15:21:39  2       THE COURT:  Now here the government has

15:21:40  3  indicated that for Count 1, which is the charge of

15:21:46  4  enticement of a minor in violation of Title 18 U.S.C.

15:21:52  5  Section 2422(b), that there is a mandatory minimum

15:21:56  6  prison sentence of 10 years, a maximum possible prison

15:22:00  7  sentence of life, a fine of $250,000, a mandatory $100

15:22:08  8  special assessment, and a supervised release term of at

15:22:11  9  least five years and up to life.  Those are the

15:22:13  10  parameters of what the lowest and the highest that I can

15:22:17  11  impose for the conviction on Count 1.  Do you understand

15:22:19  12  that?

15:22:20  13        THE DEFENDANT:  Yes, ma'am.

15:22:20  14        THE COURT:  Now, for Count 2, that is the

15:22:25  15  attempted obstruction of justice charge, the maximum

15:22:28  16  possible prison sentence is 20 years, a fine of

15:22:33  17  $250,000, there is another mandatory $100 special

15:22:36  18  assessment, and then the supervised release term is up

15:22:38  19  to three years.  Do you understand that?

15:22:39  20        THE DEFENDANT:  Yes, ma'am.

15:22:41  21        THE COURT:  And then for Count 3, an

15:22:45  22  obstruction of justice charge, the maximum possible

15:22:48  23  prison sentence is 20 years, a fine of $250,000, there

15:22:53  24  is a mandatory $100 special assessment, and then the

15:22:56  25  supervised release term is up to three years.  Do you

1                          USA VS. J. MCGRAIN

15:22:58   2   understand that?

15:22:59   3                    THE DEFENDANT:  Yes, ma'am.

15:23:01   4                    THE COURT:  Now, those $100 special

15:23:03   5   assessments, they may not seem like a big deal in the

15:23:06   6   scheme of things, they are mandatory.  I have to impose

15:23:09   7   them as part of sentencing.  Do you understand that?

15:23:11   8                    THE DEFENDANT:  Yes.

15:23:11   9                    THE COURT:  In addition, supervised release.

15:23:15   10  Have you talked to Mr. Ciccone about supervised release?

15:23:18   11                   THE DEFENDANT:  Yes.

15:23:18   12                   THE COURT:  It's a type of -- that is what

15:23:20   13  they call it in Federal Court, it's a type of probation

15:23:24   14  or parole.  And after any prison sentence, you'll be

15:23:26   15  placed on supervised release for a certain number of

15:23:29   16  years up to the maximum of life that is allowed for

15:23:32   17  Count 1.  And while on supervised release, you'll need

15:23:34   18  to comply with certain terms and conditions that I set

15:23:37   19  and that the probation office sets with my approval.  Do

15:23:40   20  you understand that?

15:23:40   21                   THE DEFENDANT:  Yes, ma'am.

15:23:42   22                   THE COURT:  Now, if while on supervised

15:23:44   23  release it's proven by a preponderance of evidence that

15:23:47   24  you violated those terms and conditions, then you could

15:23:50   25  go back to prison without getting any credit for the

```
 1                    USA VS. J. MCGRAIN
15:23:53  2   time that you've already served on supervised release.
15:23:55  3   Do you understand that?
15:23:55  4              THE DEFENDANT:  Yes, ma'am.
15:24:06  5              THE COURT:  Now, let's take a look at the
15:24:09  6   Guideline calculations that the government has at least
15:24:12  7   calculated.  If you look at paragraph 7 of the
15:24:15  8   government's filing at docket 71.  The government, in
15:24:21  9   this document, Mr. McGrain, is setting forth what it
15:24:25 10   believes the Guideline calculation will provide.  This
15:24:28 11   doesn't bind me, it doesn't bind you.  Ultimately I need
15:24:31 12   to make my own determination about that, and I'll do
15:24:34 13   that at the time of sentencing.  But this, at least,
15:24:37 14   let's us know what the government's present position is
15:24:40 15   in terms of what the Guidelines provide.
15:24:43 16              THE DEFENDANT:  Yes, ma'am.
15:24:44 17              THE COURT:  And the government may change
15:24:45 18   its position up to the time of sentencing because,
15:24:48 19   again, there is no plea agreement here.  They are
15:24:51 20   setting forth what they believe are the correct
15:24:53 21   calculations.  So for Count 1, they believe there is a
15:24:56 22   base offense level of 28.  They believe then in
15:24:59 23   paragraph 8 that there should be a two-level increase
15:25:02 24   because the use of a computer or an interactive computer
15:25:05 25   service was used to persuade, induce, entice, coerce or
```

```
 1                    USA VS. J. MCGRAIN
 2   facilitate the travel of the minor.  And then a
 3   two-level increase because of the commission of a sex
 4   act.  And then the government also believes there should
 5   be another two-level increase because of the obstruction
 6   of justice.  And then the government believes, as set
 7   forth in paragraph 10, that there should be a five-level
 8   increase because the underlying offense is a chapter 117
 9   crime, so that your adjusted offense level for Count 1
10   would be a 39.  Do you understand that is the
11   government's position?
12               THE DEFENDANT:  Yes, ma'am.
13               THE COURT:  And then counts 2 and 3, which
14   are the obstruction of justice charges, are grouped
15   together.  Government believes that they provide a base
16   offense level of 14.  So, under the Guidelines, if these
17   numbers are correct, you would rely on the offense level
18   calculated for Count 1, which is a 39.  Do you
19   understand that?
20               THE DEFENDANT:  Yes, ma'am.
21               THE COURT:  Now, if in fact I determine at
22   the time of sentencing that you truly are remorseful for
23   your conduct and that you have accepted responsibility,
24   then the Guidelines would provide that there should be a
25   three-level increase in the offense level, which,
```

```
        1                   USA VS. J. MCGRAIN
15:26:23  2   according to the government's calculations, would take
15:26:25  3   your offense level down to a 36.  Do you understand
15:26:28  4   that?
15:26:28  5             THE DEFENDANT:  Yes, ma'am.
15:26:30  6             THE COURT:  Now, you don't get acceptance of
15:26:32  7   responsibility automatically by coming in here and
15:26:35  8   pleading guilty.  Remember I said that you're going to
15:26:37  9   be interviewed by the probation department and they are
15:26:39 10   going to prepare a Presentence Investigation Report?
15:26:42 11             THE DEFENDANT:  Yes, ma'am.
15:26:43 12             THE COURT:  Well, I have to be satisfied,
15:26:45 13   Mr. McGrain, at the time of sentencing, based in part on
15:26:48 14   what I see in the report, that you truly are remorseful
15:26:51 15   for your conduct and that you have accepted
15:26:53 16   responsibility.  Do you understand that?
15:26:54 17             THE DEFENDANT:  Yes, ma'am.
15:26:54 18             THE COURT:  If you were to commit another
15:26:56 19   crime between now and the time of sentencing, that could
15:26:59 20   lead me to conclude that you have not accepted
15:27:02 21   responsibility.  Do you understand that?
15:27:03 22             THE DEFENDANT:  Yes, ma'am.
15:27:05 23             THE COURT:  And then the government believes
15:27:07 24   that you are a criminal history category I, which is the
15:27:10 25   lowest level that you can have.  Do you understand that?
```

1          USA VS. J. MCGRAIN

15:27:12   2          THE DEFENDANT:  Yes, ma'am.

15:27:13   3          THE COURT:  So if these numbers are correct

15:27:16   4   and you have an offense level of 36, and a criminal

15:27:19   5   history category of I, as set forth in paragraph 18 of

15:27:24   6   the government's filing, the Guidelines would recommend

15:27:26   7   a prison sentence of 188 to 235 months, a fine of

15:27:35   8   $40,000 up to $250,000, and a supervised release term of

15:27:39   9   five years up to life.  Do you understand that?

15:27:40   10          THE DEFENDANT:  Yes, ma'am.

15:27:41   11          THE COURT:  Now, I want to make sure you're

15:27:43   12   clear on a couple of things, Mr. McGrain.  First of all,

15:27:46   13   once you plead guilty, you cannot take your plea back.

15:27:49   14   And the reality is I could sentence you up to the

15:27:52   15   maximum allowed under the law, which includes life in

15:27:55   16   prison.  Do you understand that?

15:27:56   17          THE DEFENDANT:  Yes, ma'am.

15:27:57   18          THE COURT:  And in addition, as I've said,

15:27:59   19   these are the government's Guideline calculations or

15:28:02   20   what the government believes are the Guideline

15:28:03   21   calculations right now.  I'm going to make my own

15:28:07   22   determination about that.  And I'll do that at the time

15:28:09   23   of sentencing.  Do you understand that?

15:28:10   24          THE DEFENDANT:  Yes.

15:28:11   25          THE COURT:  But, ultimately, the Guidelines

```
 1                  USA VS. J. MCGRAIN
 2   are just recommendations.  They are not mandatory.  What
 3   is mandatory here is that I impose this mandatory
 4   minimum prison sentence of 10 years for the conviction
 5   on Count 1.  Do you understand that?
 6              THE DEFENDANT:  Yes, ma'am.
 7              THE COURT:  Do you have any questions for me
 8   or Mr. Ciccone about anything that we've talked about up
 9   to this point?
10              THE DEFENDANT:  No, ma'am.
11              THE COURT:  Let me talk to you about the
12   forfeiture allegations in the indictment, too.  Again,
13   it may not seem like a big deal in the scheme of things,
14   but the indictment has a forfeiture allegation where it
15   seeks to forfeit the cell phone, that is the Samsung
16   Galaxy cell phone.  Do you understand that?
17              THE DEFENDANT:  Yes.
18              THE COURT:  Now, normally before the
19   government can take property that belongs to an
20   individual, that individual has the right to certain
21   notice, you actually could go to a jury trial on that
22   issue.  But one of the questions that I'll be asking you
23   is whether you admit to the forfeiture allegation that
24   is part of this indictment.  Do you understand that?
25              THE DEFENDANT:  Yes, ma'am.
```

```
 1                    USA VS. J. MCGRAIN
 2        THE COURT:  Let me talk to you now, Mr.
 3   McGrain, about the rights that you're going to be giving
 4   up by pleading guilty as opposed to going to trial.
 5   First of all, do you understand that you do not need to
 6   plead guilty to anything.  If you wanted, you could go
 7   forward with a jury trial that we have scheduled to
 8   start on June 1.  Do you understand that?
 9        THE DEFENDANT:  Yes, ma'am.
10        THE COURT:  And at that trial, as well as at
11   all critical stages of this proceeding, you'd have the
12   right to continued representation by counsel.  Do you
13   understand that?
14        THE DEFENDANT:  Yes, ma'am.
15        THE COURT:  You would not have the burden to
16   prove anything at this trial.  The sole burden of proof
17   at this trial would be on the government who would be
18   responsible for calling witnesses and putting evidence
19   into the record.  Do you understand that?
20        THE DEFENDANT:  Yes, ma'am.
21        THE COURT:  Your attorney on your behalf
22   could challenge any of the evidence that the government
23   sought to introduce and he could confront and cross
24   examine any of the witnesses who testified.  Do you
25   understand that?
```

1      USA VS. J. MCGRAIN

15:30:11 2    THE DEFENDANT:  Yes, ma'am.

15:30:13 3    THE COURT:  You'd have the right, if you

15:30:14 4 wanted to, to testify on your own behalf or you could

15:30:19 5 choose not to do that.  Do you understand that?

15:30:21 6    THE DEFENDANT:  Yes, ma'am.

15:30:21 7    THE COURT:  You also would have the right to

15:30:23 8 put in a defense case.  You could call witnesses, compel

15:30:27 9 them to attend the trial, put in your own evidentiary

15:30:30 10 proof or you could chose not to do that.  Do you

15:30:32 11 understand that?

15:30:32 12    THE DEFENDANT:  Yes, ma'am.

15:30:33 13    THE COURT:  And if you chose not to testify

15:30:34 14 or if you chose not to put in any type of a defense

15:30:37 15 case, I would specifically instruct the jury that they

15:30:40 16 could not in any way consider that as evidence of your

15:30:43 17 guilty or evidence of anything else for that matter.  Do

15:30:46 18 you understand that?

15:30:46 19    THE DEFENDANT:  Yes, ma'am.

15:30:48 20    THE COURT:  In addition, the jury would have

15:30:50 21 to consider each charge against you separately and find

15:30:54 22 that the government had proven each element of the

15:30:56 23 charge under consideration beyond a reasonable doubt.

15:30:59 24 Do you understand that?

15:31:00 25    THE DEFENDANT:  Yes, ma'am.

1                    USA VS. J. MCGRAIN

15:31:02   2        THE COURT:  And why don't you, if you would,

15:31:04   3   turn to paragraph five of the government's statement.  I

15:31:07   4   guess, first of all, Mr. Ciccone, do you disagree with

15:31:10   5   the elements that are set forth here by the government?

15:31:13   6        MR. CICCONE:  No, your Honor.

15:31:14   7        THE COURT:  Okay.  So let's go through each

15:31:17   8   of the counts and each of the elements, Mr. McGrain,

15:31:21   9   that the government would have to prove at trial.  So

15:31:23   10  for Count 1, before you could be convicted, the

15:31:28   11  government would have to prove beyond a reasonable doubt

15:31:31   12  that you knowingly used or attempted to use a facility

15:31:34   13  or means of interstate commerce to persuade, induce,

15:31:38   14  entice or coerce an individual under the age of 18 to

15:31:42   15  engage in sexual activity.  No. 2, you believed that

15:31:47   16  such individual was less than 18 years of age.  And

15:31:50   17  three, you could have to been charged with a criminal

15:31:53   18  offense for engaging in the sexual activity.  Do you

15:31:58   19  understand those are the elements that the government

15:31:59   20  would have to prove beyond a reasonable doubt before you

15:32:01   21  could be convicted of Count 1?

15:32:03   22        THE DEFENDANT:  Yes, ma'am.

15:32:04   23        THE COURT:  And then for Count 2, the

15:32:06   24  government would have to prove, beyond a reasonable

15:32:09   25  doubt, No. 1, that you knowingly used intimidation,

1                          USA VS. J. MCGRAIN

15:32:12   2   threatened or corruptly persuaded a witness or attempted

15:32:16   3   to do so; and two, that you acted knowingly and with the

15:32:20   4   intent to influence the testimony of the witness in an

15:32:24   5   official federal proceeding.  Do you understand those

15:32:30   6   are the elements that the government would have to prove

15:32:32   7   beyond a reasonable doubt before you could be convicted

15:32:33   8   of Count 2?

15:32:34   9              THE DEFENDANT:  Yes, ma'am.

15:32:35   10             THE COURT:  And then for Count 3, the

15:32:37   11  government would have to prove, No. 1, that you altered

15:32:40   12  or falsified or destroyed or concealed any record,

15:32:45   13  document or object that can be used to record or

15:32:48   14  preserve information; number two, that you acted

15:32:52   15  knowingly; and three, that you acted with the intent to

15:32:55   16  impede, obstruct or influence an investigation within

15:32:59   17  the jurisdiction of or in relation to a department or

15:33:02   18  agency of the United States Government.  Do you

15:33:05   19  understand those are the elements that the government

15:33:06   20  would have to prove beyond a reasonable doubt before you

15:33:10   21  could be convicted of Count 3?

15:33:14   22             THE DEFENDANT:  Yes, ma'am.

15:33:15   23             THE COURT:  In addition, the jury would have

15:33:17   24  to be unanimous in its verdict.  In other words, all 12

15:33:20   25  people would have to be in agreement that the government

```
 1                    USA VS. J. MCGRAIN
15:33:22  2  met its burden of proof.  Do you understand that?
15:33:24  3              THE DEFENDANT:  Yes, ma'am.
15:33:25  4              THE COURT:  Do you understand that you're
15:33:26  5  going to be giving up these rights?
15:33:28  6              THE DEFENDANT:  Yes, ma'am.
15:33:29  7              THE COURT:  And do you understand that a
15:33:30  8  plea of guilty is the same as if a jury found you guilty
15:33:33  9  after trial?
15:33:34 10              THE DEFENDANT:  Yes, ma'am.
15:33:35 11              THE COURT:  Now, with a felony conviction,
15:33:37 12  you may lose certain civil rights, such as the right to
15:33:41 13  vote, the right to hold certain licenses or offices, the
15:33:44 14  right to sit on a jury.  Do you understand that?
15:33:46 15              THE DEFENDANT:  Yes, ma'am.
15:33:49 16              THE COURT:  Has anyone coerced you or
15:33:51 17  threatened you in any way to get you to plead guilty?
15:33:54 18              THE DEFENDANT:  No, ma'am.
15:33:55 19              THE COURT:  Are you pleading guilty because
15:33:57 20  based on your discussions with your attorney, you
15:33:59 21  believe it's in your best interest to do so?
15:34:01 22              THE DEFENDANT:  Yes.
15:34:02 23              THE COURT:  Are you pleading guilty because
15:34:03 24  you are guilty?
15:34:04 25              THE DEFENDANT:  Yes.
```

```
 1                    USA VS. J. MCGRAIN
 2           THE COURT:  Have you answered my questions
 3  truthfully?
 4           THE DEFENDANT:  Yes, ma'am.
 5           THE COURT:  Do you have any question for me
 6  or Mr. Ciccone?
 7           THE DEFENDANT:  No, ma'am.
 8           THE COURT:  All right.  I do find, based on
 9  Mr. McGrain's answers to my questions, that he is
10  entering into this plea in a knowing, voluntary and
11  intelligent manner.  Now, before I can accept your pleas
12  though, Mr. McGrain, you're going to have to tell me
13  what you did.  I need to make sure there is a factual
14  basis for your plea.  So let's go through each count
15  separately.
16           And specifically for enticement of a minor,
17  can you tell me what you did that is causing you to
18  plead guilty?
19           THE DEFENDANT:  I text messaged my
20  girlfriend's daughter.  I was going through a divorce at
21  the time.  Me and her ended up becoming close and I
22  started to have feelings for her.  And so we were
23  texting messages back and forth.  And I, we were texting
24  on how much we cared about each other.  And I sent her
25  numerous texts saying how much I loved her.
```

```
 1                    USA VS. J. MCGRAIN
 2              THE COURT:  How old -- by "her" you're
 3    referring to the daughter?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  And how old was she?
 6              THE DEFENDANT:  At the time it all started,
 7    she was 15; she just turned 15.
 8              THE COURT:  And you knew she was less than
 9    18 years of age?
10              THE DEFENDANT:  Yes, ma'am.
11              THE COURT:  And did you have sexual
12    relations with her?
13              THE DEFENDANT:  No, ma'am.
14              THE COURT:  You did not?
15              THE DEFENDANT:  Ma'am, I didn't have sex
16    with her, no.  I can't sit here and tell you I did
17    because I didn't.  We were waiting until she was 18.
18              MS. MARANGOLA:  It's not an element of the
19    crime that is necessary, but, in terms of -- I will --
20    that will be a sentencing enhancement that I will submit
21    that I'll prove to you at sentencing that that happened,
22    yes.  But, in terms of the communications, to plead
23    guilty to enticement of a minor, it has to go beyond
24    love.  He has to be admitting to the chats.  I didn't
25    bring them down, I have them upstairs, if that is
```

15:35:11
15:35:14
15:35:15
15:35:16
15:35:17
15:35:19
15:35:22
15:35:23
15:35:24
15:35:25
15:35:27
15:35:28
15:35:30
15:35:31
15:35:33
15:35:36
15:35:47
15:35:49
15:35:53
15:35:58
15:36:00
15:36:05
15:36:10
15:36:13

```
 1                    USA VS. J. MCGRAIN
```

15:36:16  2  required, where he talks about wanting to feel her naked

15:36:20  3  body, have sex with her, sexual communications, Judge,

15:36:24  4  which would be sufficient.  He is enticing her to engage

15:36:28  5  in that sexual activity.  And we're alleging that would

15:36:31  6  be any sexual conduct with someone under the age of 18.

15:36:36  7  He has to admit more than him saying "I love you" or "I

15:36:40  8  loved you."

15:36:41  9          THE COURT:  So the first element of Count 1

15:36:43  10  is that you have to admit that you knowingly used or

15:36:47  11  attempted to use a facility or means of interstate

15:36:50  12  commerce.

15:36:52  13          THE DEFENDANT:  Yes.  I sent text messages

15:36:54  14  saying that I wanted to have sex with her.  I couldn't

15:36:57  15  wait until she was actually old enough to have sex with

15:37:01  16  one another.

15:37:01  17          THE COURT:  Well, did you knowingly try to

15:37:05  18  persuade, induce, entice or coerce her to engage in

15:37:08  19  sexual activity.

15:37:10  20          THE DEFENDANT:  No.  Even in the messages

15:37:12  21  that they sent, that is exactly what I said.  "I can't

15:37:15  22  wait to feel your naked body against mine."  I didn't

15:37:19  23  coerce her.  That is what I said, word for word.  And I

15:37:24  24  even said and there is even in after the messages where

15:37:27  25  I even told her that I will wait until she is 18 because

USA VS. J. MCGRAIN

15 years in prison is not worth having sex with her.  I
was willing to wait.  Because, like I said, I loved this
girl.  It wasn't lust, it wasn't just for sex.  I was
going through a messy divorce with my wife, this girl
was there.  She was there to comfort me and she was
there to talk to.  And she made me feel good.  She made
me feel young.  So we were doing what the young people
do, sending text messages back and forth to one another.
And that is what I told her, "I can't wait to hold your
naked body against mine.  I can't wait until we can have
sex."  Because that is what we were doing, we were
waiting.  Why she is telling everyone we had sex, I
don't know.  The only thing I can conclude is because I
came to my senses and figured she is still a child and I
didn't want to ruin her life.  I wanted to move on and
get out of the house as quickly as I could.  The moment
I did that, that is when everything blew up.  But I'm
not going to sit here and lie and say I had sex with
this girl when I did not.  I clearly did not.  I
wouldn't do that.

                If that means this is all thrown away, then
I'm going to have to throw it away.  I'm not going to
admit to having sex with her, I didn't.

                THE COURT:  You're not admitting to

1                   USA VS. J. MCGRAIN

15:39:03   2   attempting to persuade, induce, coerce or entice her.

15:39:06   3              THE DEFENDANT:  No.  All I did is -- read

15:39:09   4   the text messages.

15:39:12   5              THE COURT:  I think the jury will read the

15:39:14   6   text messages.

15:39:15   7              THE DEFENDANT:  I said, "I can't wait until

15:39:17   8   I hold your naked body."  And "I can't wait until we

15:39:21   9   have sex."  I've read those text messages over and over

15:39:26   10  and over.  I read them over and over.  I've been going

15:39:29   11  through them every night.  Not one text message talks

15:39:33   12  about us having sex, not one.

15:39:37   13             THE COURT:  You don't think "holding your

15:39:39   14  naked body" is talking about having sex?

15:39:42   15             THE DEFENDANT:  That is talking about having

15:39:44   16  sex, but that doesn't mean we've had sex.

15:39:47   17             THE COURT:  So you're denying that you used

15:39:51   18  the text messages to try and persuade, induce, entice or

15:39:56   19  coerce her to engage in sexual activity.

15:39:58   20             THE DEFENDANT:  No.  I did entice her and

15:40:01   21  was coercing her to having sex, to have it in the

15:40:05   22  future.  That doesn't mean I was having sex with her.

15:40:08   23  No.  In the future, when we were 18 -- when she was 18.

15:40:12   24  That was the game plan.

15:40:13   25             THE COURT:  But she was 15 at the time.

```
 1                    USA VS. J. MCGRAIN

 2         THE DEFENDANT:  At the time, she just turned

 3  15.  Actually, that text message, she was 16 at that

 4  time when we -- when we started to talk about the sex is

 5  when she was 16.

 6         THE COURT:  How do we get around the element

 7  that he could have been charged with a criminal offense

 8  for engaging in sexual activity.  I know that he doesn't

 9  have to have engaged in sex, but he has to have intended

10  to entice her to engage in sex at the time he is engaged

11  in the communications.

12         MS. MARANGOLA:  Of course, Judge.  And the

13  communications, I regret not having brought the Facebook

14  messages down here.  There are messages that he says

15  "FU, the sex wasn't worth it."

16         THE COURT:  Wait a minute, let Ms. Marangola

17  speak.

18         MS. MARANGOLA:  So the government's theory,

19  based on the evidence I presented to the jury, is he did

20  have sex with her.  He consistently had sex with her.

21         THE COURT:  And that is what she claims as

22  well?

23         MS. MARANGOLA:  Yes.

24         THE COURT:  And it lasted for over a year?

25         MS. MARANGOLA:  Yes.  Right before she
```

USA VS. J. MCGRAIN

turned 15, it started when she was 14 and went until she
was 16.  And the messages on her phone were uncovered by
family members and law enforcement was called.  That is
how the case came to light.  The government's theory, he
wasn't telling her to wait until they were 18.  He was
communicating with her over Facebook, text messages,
SnapChat, all of the above.  And they were discussing
having sex tomorrow during school.  It wasn't to wait
when they were 18.  That would not be a crime.  So what
he is colloquying to, at this point, it's the
government's position that is not criminal conduct for
which he could be guilty to Count 1.

THE COURT:  It doesn't seem like there is a
plea to Count 1.  I assume you want to go forward with
Count 2 and 3, so that won't make sense.

I'm not going to accept your plea.  We're
not going to go forward, Mr. McGrain.  We'll have a jury
decide as to whether or not you're in fact guilty as
charged in the indictment and we'll see how that gets
resolved.

We have a status conference set for next
Friday.  I know, Ms. Marangola and Mr. Ciccone,
indicated in by and large you're fine with the form of
the questionnaire that Judge Geraci usually uses.  I

```
                              USA VS. J. MCGRAIN
15:42:40   2   want to take another look at it and see if there is
15:42:43   3   anything should be altered because of this case or the
15:42:46   4   nature of the case, and I'll circulate that to everybody
15:42:49   5   before next Wednesday and we'll talk more specifically
15:42:52   6   about the jury selection, really, next Wednesday, just
15:42:55   7   what my thoughts are in terms of how we'll handle that
15:42:58   8   and give them the precautions that we have to utilize.
15:43:03   9            MS. MARANGOLA:  Yes.
15:43:04  10            THE COURT:  Anything else, Mr. Ciccone?
15:43:05  11            MR. CICCONE:  No, Judge.  Thank you.
15:43:06  12            THE COURT:  Ms. Marangola?
15:43:07  13            MS. MARANGOLA:  No, Judge.  Thank you.
15:43:08  14            THE COURT:  Have a good afternoon,
15:43:10  15   everybody.
15:43:11  16            MR. CICCONE:  Thank you, your Honor.
15:43:12  17            THE DEFENDANT:  Thank you.
          18                      *    *    *
          19              CERTIFICATE OF REPORTER
          20
          21      I certify that the foregoing is a correct transcript
          22   of the record of proceedings in the above-entitled
          23   matter.
          24   S/ Karen J. Clark,  RPR
          25   Official Court Reporter
```

USA VS. J. MCGRAIN